WILSON W. A. WILLIAMS, Appellant, v. A. M. RANSOM, F. E. RANSOM and MRS. SARAH RANSOM, Partners Doing Business Under Firm Name of F. E. RANSOM & COMPANY.

Division One, March 31, 1911.

1. **APPEAL: Dismissal: Omitted Deposition.** A failure of appellant to incorporate in the abstract a lost deposition introduced by defendant, or the substance thereof, will not authorize a dismissal of the appeal. Such deposition, if preserved, would have been a part of the bill of exceptions, and the record proper is for consideration on appeal, though there be no bill of exceptions.

2. **————: Omitted Deposition: Review of Instructions Nevertheless.** Ordinarily, where the only errors complained of by plaintiff are in the giving or refusing of instructions, the appellate court cannot properly pass upon the assignment if a part of defendant's evidence is omitted from the abstract. But where

the verdict was for defendant, and the omitted evidence was a deposition of plaintiff, taken and introduced by defendant to show admissions and contradictory statements, and plaintiff contends that the facts shown by the abstract are such as will enable the appellate court to determine whether or not the case was tried upon the wrong theory, the court will consider whether or not the jury were misdirected.

3. **INSTRUCTIONS: Correct Theory: Too Long.** An instruction covering almost three large pages of printed matter, and so framed that no average jury could follow the train of thought contained in it, should be refused, even though its theory be correct.

4. **NEGLIGENCE: Master and Servant: Work Under Servant's Control.** Where the temporary scaffold on which plaintiff carpenter was at work fell and injured him, and there is evidence that plaintiff was to have and did have nothing to do with its construction, and also evidence that the foreman directed the carpenters and helpers to put up the braces and this order included the construction of the scaffold by them, it is not error to instruct the jury that plaintiff cannot recover unless defendants, through their foreman, furnished plaintiff a completed scaffold and ordered him to use the same.

5. ———: ———: ———: **Liability.** Where the carpenter had a double duty to perform, namely, to construct a safe and suitable scaffold and then go upon the same and do the work required, and he had the material and means at hand to construct it safely, and he negligently constructed it and because of said defective and unsafe construction the scaffold fell and he was injured, he cannot recover damages from his master. The statute (Sec. 7843, R. S. 1909) does not make the master liable under such circumstances.

6. ———: ———: **Negligence of Fellow-Servant: Statute.** The statute (Sec. 7843, R. S. 1909) requiring all scaffolds used for the erection of a building to be well and safely supported and so secured as to insure the safety of persons working thereon, does not preclude the defense of negligence of a fellow-servant where the principal has left the construction of the scaffold to the workmen using it. Where a group of carpenters and their helpers were at work in erecting the frame work of a building, and as a part of their work they were to construct a scaffold to work on, and had suitable material at hand to construct it in a safe way, but did not use that material but constructed it in an unsafe way, and it fell and injured one of the carpenters who was standing on it while in the performance of his work, they were fellow-servants, and though the scaffold was constructed by other carpenters of the group and the helpers, he cannot, under the statute, recover damages from the master.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

AFFIRMED.

*N. F. Heitman* for appellant.

(1) Plaintiff's case is bottomed on this statute: "All scaffolds used in or for the erection of any kind of building, shall be well and safely supported, and so secured as to insure the safety of persons working thereon, against the falling thereof." R. S. 1899, secs. 6447 and 6450. (2) Said statute applies to Williams's case because the scaffold that fell and injured him was, at the time, being used in and for the erection of the building. Said section did not apply in the Forbes case, 198 Mo. 193, because the scaffold in that case was not at the time of Forbes's injury being used in and for the erection of the building. Casper v. Lewin, 82 Kas. 604; Vignaux v. Company, 193 Mo. 1. (3) At common law the duty of preparing scaffolds could be delegated to servants and their fellow-servants. Said duty could be assumed, or not assumed, by the master as he saw fit. If assumed by the master, he was liable. If delegated to a servant or fellow-servants, at common law, the master was not liable. Whalen v. Church, 62 Mo. 326; Steward v. Ferguson, 164 N. Y. 553; Tower v. Reber, 11 Mo. App. 203; Huth v. Doyle, 76 Mo. App. 671; Chambers v. Company, 129 Fed. 561; Conners v. Company, 29 Fed. 629; Ackerson v. Denison, 117 Mass. 407; Rabson v. Leighton, 187 Mass. 432; Meyer v. Company, 187 Mass. 586. (4) Under the statute there is a fixed rule by which to determine when the duty may be delegated, and when not. When the statute applies at all, the duty cannot be delegated to a fellow-servant. When it does not apply, the duty may be delegated. The statutory duty applies to a certain class of scaffolds. What is that class? "All scaffolds used in or

for the erection of any kind of building.'' The scaffold in the Forbes case did not come within the statutory class, and hence there was no statutory duty attaching to the scaffold in that· case. This distinction is drawn in the Forbes opinion. Vignaux v. Company, 193 Mo. 1; Casper v. Lewin, 82 Kas. 604. (5) The fellow-servant doctrine is a branch of the assumption-of-risk doctrine. When the assumption-of-risk doctrine falls, the branch falls also. The two doctrines are inseparable, because fellow-service is founded on assumption of risk. Whalan v. Church, 62 Mo. 326; Adams v. Company, 95 Mo. App. 111; Bluedorn v. Company, 108 Mo. 447. (6) Since the statute applies, neither assumption of risk nor fellow-service were defenses. Only contributory negligence was a defense. To violate the statute is unlawful—is a misdemeanor. For plaintiff himself to violate the statute would defeat him. It would be unlawful for plaintiff to assume the risks arising from Hodge's or McLaughlin's misdemeanors in violating the statute. Stafford v. Adams, 113 Mo. App. 717; R. S. 1899, secs. 6447, and 6450; McGinnis v. Printing Co., 122 Mo. App. 227; Bluedorn v. Railroad, 108 Mo. 447; Blair v. Heibel, 103 Mo. App. 621; Stafford v. Adams, 113 Mo. App. 717; Groves v. Wimborne, 2 Q. B. (1898) 402; Stewart v. Ferguson, 164 N. Y. 553; Lore v. Company, 160 Mo. 608; Henderson v. Kansas City, 177 Mo. 493; Sachowitz v. Company, 78 Mo. App. 144; Curtise v. McNair, 173 Mo. 270; Wendler v. Company, 165 Mo. 536; Marino v. Lehmairer, 173 N. Y. 530; Harvey v. McConchi, 77 App. Div. (N. Y.) 361; Sluder v. Railroad, 189 Mo. 107. · (7) In instruction 1 for the plaintiff the court uses the statutory phrase, ''so secured as to insure the safety of persons working thereon,'' and yet the court gave instruction 11 for defendants, in which the court says: ''The defendant did not insure the safety of the plaintiff.'' In the one instruction the court adopts the theory of insurance established by the stat-

ute; in the other, the court denies that theory. Here was a direct conflict; which confused and misled the jury. Instruction 11 was error. It was prejudicial. R. S. 1899, sec. 6447 and 6450; Bluedorn v. Railroad, 108 Mo. 447. (8) The refusal to give plaintiff's instruction 4 was prejudicial error. Smith v. Fordyce, 190 Mo. 25. Instruction 4 is based on Tabler v. Railroad, 93 Mo. 79. The substitution of the ladder for the half trestle by order of the foreman was a violation of said Secs. 6447 and 6450 and is like the substitution of the rope for the chain, by order of the foreman, in the Tabler case. The allegations of negligence in the first count of the petition were broad enough to admit the theory embodied in instruction 4. In fact, the bulk of plaintiff's evidence related to the theory of that instruction, and yet the court refused plaintiff the benefit of said theory. This was error. Wendler v. Company, 165 Mo. 536; Bluedorn v. Company, 108 Mo. 447; Akerson v. Denison, 117 Mass. 407; Harper v. Railroad, 47 Mo. 567; Rabson v. Leighton, 187 Mass. 432. Huth v. Doyle, 76 Mo. App. 671, decides that a servant to whom is delegated the duty of repairing a ladder used by another servant in his work, thereby becomes vice-principal. Hodge prepared this ladder without braces under the direct order and design of the foreman. Consider that plaintiff was always driving the nails with the maul, while Hodge and the laborer were preparing the ladder scaffolds; that all this was done under the superintendence and direction of the foreman; that plaintiff never himself assisted to put up a ladder; that in the nature of things he would be driving the nails in the east header while the ladder scaffolds were being put up; and that the foreman knew all this. Consider Conners v. Company, 29 Fed. 629, and it becomes clear that the court erred in giving instructions 12 and 8, which supposed that plaintiff himself aided in putting up the ladder which fell. There was no evidence to support this hypothe-

sis. (9) · This statute, Sec. 6447, is remedial and ought to be liberally construed in favor of the servant. The guiding rule is: "Look at the old law, the mischief, and the remedy, and let the construction be such as to promote the remedy, and suppress the mischief." The mischief was the deplorable loss of life and limb from the falling of scaffolds. The Legislature recognized that the act of constructing and maintaining scaffolds for use in the erection of buildings, was an act which, from its very nature, was likely to cause injury, unless a high degree of care was exercised. Scaffolds can be put up so as not to fall. They must be so put up, intended the Legislature. A scaffold is plainly an appliance, when used in or for the erection of a building. The duty of supplying appliances is on the master, not on the servant. The Legislature used the phrase: "So secure as to insure the safety of persons working thereon, against the falling thereof." This language means what is says, and it plainly says that the master must insure the servant against the falling. Not against everything, but against the falling. This was a · reasonable exercise of legislative authority. The word "insure" must be given its plain, ordinary meaning. State v. Standard Oil Co., 194 Mo. 148, and 218 Mo. 1; Casper v. Lewin, 82 Kas. 604; Henry v. Evans, 97 Mo. 47; Henderson v. City, 177 Mo. 493. (10) Hodge testified that he made the ladder without braces in accord with the direct order and design of the foreman. In doing so Hodge was a vice-principal. Kennedy v. Company, 215 Mo. 688; Huth v. Doyle, 76 Mo. App. 671. Hence it was error to instruct that it was plaintiff's duty to brace the ladder, as was done by instructions 6, 9, 10, 16, and 17. This was error, even at common law, under Huth v. Doyle. Much more was it error under the statute. The plaintiff whose duty it was to finish nailing the nails on next to the wall header would be engaged in that, and would not know the dangerous manner in which the ladder was put

up by other people, to-wit, Hodge and the laborer to whom this duty was committed, and they were vice-principals under the statute (Secs. 6447 and 6450). Conners v. Company, 29 Fed. 629; Stafford v. Adams, 113 Mo. App. 717.

*Pierre R. Porter* for respondents.

(1) The demurrer to the evidence should have been sustained. (a) The evidence at the trial was undisputed that the defendants provided suitable materials for the scaffolding and entrusted the duty of erecting it to the plaintiff and his fellow-servants as a part of the work which they were engaged to perform. (b) Under such a state of facts, defendants, at common law, could set up the defense of negligence of a fellow-servant. Herbert v. Wiggins Ferry Co., 107 Mo. App. 299; Steffenson v. Roehr Co., 136 Mo. App. 225. (c) And the statute does not deprive defendants of this defense. Forbes v. Dunnavent, 198 Mo. 193. (d) The New York statute has been similarly construed. Hutton v. Holdrook Co., 139 Fed. 734; Rotondo v. Smyth, 92 N. Y. (App. Div) 153. And also the Massachusetts statute. Ashley v. Hart, 147 Mass. 573. (e) A statute in derogation of the common law must be strictly construed. Jackson v. Railroad, 87 Mo. 422; Hutton v. Holdrook, 139 Fed. 734. (b) The statute does not abolish the defense of assumption of risk. Cordage Co. v. Miller, 126 Fed. 509. (g) It was plaintiff's duty to assist in the erection of these ladder-scaffolds, and he had frequently done so at other times. (2) There was no error in the instructions. The court committed no error in giving or refusing instructions. Even if it did, since the demurrer to the evidence should have been sustained, all assignments of error predicated upon instructions given or refused must be considered immaterial. Forbes case, supra. (a) Instruction 1, given for

plaintiff, and 11, given for defendants, are not in con-
flict.   The term "insure" was obviously used in two
different senses.   Instruction 1 used "insure" as it
is used in the statute, meaning in that connection to
make scaffolds secure and practically free from dan-
ger.   Instruction 11 instructed the jury that a master
merely employing a servant does not guarantee that
he will not receive injuries during his employment.
This construction could not possibly be placed upon
instruction 1.   (b)   Instruction 11 was properly given.
Colliott v. Manufacturing Co., 71 Mo. App. 171; Kelly
v. Stewart, 93 Mo. App. 60.   (c )   Hence, if there was
error it must have been in giving instruction 1, and of
this the plaintiff cannot complain.   If the jury fol-
lowed instruction 11, their conclusions were properly
founded, and if they construed instruction 1 as plain-
tiff's counsel seems to have construed it, such con-
struction could have inured only to the benefit of the
plaintiff.   Conflict in instructions is held by the courts
to be harmless where it is erroneously favorable to the
complaining party.   Summers v. Insurance Co., 90
Mo. App. 699; Reardon v. Railroad, 114 Mo. 384.   The
Bluedorn case, so confidently relied upon by the plain-
tiff on this point, has long since been expressly over-
ruled.   Baker v. Railroad, 122 Mo. 597; Christian v.
Insurance Co., 143 Mo. 468.   (d).   Instructions 8 and
12 were properly given, because there was abundant
evidence that appellant was charged with the duty of
erecting the scaffold.   If he did not participate in the
erection, it was because he either neglected his duty
or relied upon McLaughlin, his fellow-servant and
helper, whom the plaintiff frequently and with au-
thority called on to assist with such work.   And, as a
matter of law, it is wholly immaterial whether appel-
lant assisted in the construction of the scaffold.   The
Forbes case absolves the master where it is constructed
either by the injured man or by his fellow-servants
and the evidence is undisputed that his fellow-servants,

Hodge and McLaughlin, constructed this ladder-scaffold. Indeed, it is not entirely clear that appellant did not himself assist, for McLaughlin says that appellant helped fix it and that evidence alone was sufficient to justify instructions 8 and 12.

GRAVES, P. J.—Defendants, a copartnership, were erecting a two-story brick warehouse with basement. Plaintiff, a carpenter of twenty-seven years' experience, was employed to work thereon. Defendants had in their employ architects who had general supervision of the work and plans, a foreman by the name of Barber, who had in hand the general supervision of the workmen (carpenters and helpers) and the work under the plans of the architects, four carpenters, and some six or eight carpenters' helpers. Plaintiff was one of the four carpenters, and working with him was another carpenter by the name of Hodge. Carpenters worked in pairs at the work being performed at the time of the accident, which resulted in this suit. With these carpenters would work one or more helpers. On the occasion in question one McLaughlin was the helper working with plaintiff and Hodge. These helpers under the direction of the carpenters assisted in the work to be done, doing, as evinced by the evidence, the heavy and rough work.

In constructing said building rows of upright posts, sixteen inches by sixteen inches, were put up to support the second floor. On top of these posts was a cord or girder, likewise sixteen inches by sixteen inches. From these upright posts to their cords or girders were placed braces. These cords or girders were sixteen feet long, and in placing on the braces there would be a space between the ends of the two braces which had been placed between two of these upright posts. The upper ends of these braces (the ends nailed to the girder) were being fastened and made strong by putting in what was known as "headers."

These headers were pieces of lumber spiked onto the under side of the girder with the ends thereof against the beveled upper end of the brace. In this way the braces were made stable and strong. To do this work scaffolds were built up by nailing heavy boards to these upright posts, and upon these cross-pieces were placed strong boards upon which the men stood in adjusting and spiking the braces and headers. There was a space between the west row of upright posts and the west brick wall of the building. The scaffolds used for the workmen to nail on the headers in this space were, on the day of the accident, made by taking a ladder and placing it against the west wall of the building and then putting heavy planks from the last cross-piece to a round of this ladder.

At the time of the accident, plaintiff and Hodge were engaged in putting up headers. McLaughlin was their helper. They were at the west side of the building and when one header was put on, McLaughlin would be directed to move the ladder to another point and a scaffold would then be arranged as above detailed. Plaintiff in person was the man who drove the spikes (with a maul) after they had been set by Hodge. They had put up six headers on this temporary and improvised scaffold. Whilst spiking the seventh header, the ladder slipped and fell, thus throwing plaintiff to the floor below, and by such fall he received the injuries complained of in this action.

His suit is brought under section 6447, Revised Statutes 1899 (now Sec. 7843, R. S. 1909). This section thus reads: "All scaffolds or structures used in or for the erection, repairing or taking down of any kind of building shall be well and safely supported, and of sufficient width, and so secured as to insure the safety of persons working thereon, or passing under or about the same, against the falling thereof, or the falling of such materials or articles as may be used, placed or deposited thereon. All persons engaged in

Williams v. Ransom.

the erection, repairing or taking down of any kind of building shall exercise due caution and care so as to prevent injury or accident to those at work or near by. (Laws 1891, p. 159)."

Upon a trial before a jury the defendants obtained a verdict, upon which judgment was entered, and from such adverse judgment the plaintiff has appealed. The amount sued for was $15,000, thus the jurisdiction of this court. The evidence in detail, if necessary, will be discussed with the points made by appellant.

I. A preliminary question is before us in this case. Defendants urge that the appeal should be dismissed for the reason that the abstract of the record is not complete. That such is a fact is apparent upon its face. The trouble with the abstract of record lies in the fact that there is no abstract made of the evidence contained in a deposition introduced by defendants. It appears that the deposition of the plaintiff had been taken. This deposition the defendants put in evidence. The abstract recites that such deposition has been lost, and the clerk of the court so swears in an affidavit printed in the abstract. No attempt is made to give even the substance of the evidence contained in this deposition. Its absence may preclude us from examining some question involved in the record, but it will not authorize us to sustain a motion to dismiss the appeal. An appeal may be heard upon the record proper. The absence of the entire bill of exceptions will not preclude this court from hearing the appeal upon the record proper. In such case our field of inquiry is limited to an investigation of the pleadings and judgment. [Stark v. Zehnder, 204 Mo. l. c. 448; Coleman v. Roberts, 214 Mo. 634; S. M. & A. R. R. v. Wyatt, 223 Mo. l. c. 353; Hanks v. Hanks, 218 Mo. l. c. 676, and cases therein cited.]

The motion to dismiss is therefore overruled.

234 Sup.—5

II.   Defendants urge that, in as much as the errors complained of go simply to the giving and refusing of instructions, we can not properly pass upon these instructions without knowing what all the evidence shows.   Ordinarily this would be true.   But in this case the plaintiff, whose deposition is absent, testified at length.   The deposition was no doubt offered in evidence to show admissions and statements contradictory of the admissions and statements made by him on the witness stand.   If the deposition did show contradictory statements, it went to the credibility of the witness, and after all it was for the jury to determine which of his two statements were true.   In this instance the verdict was for the defendants, and if there were contradictory statements made by plaintiff, it would seem that defendants got the benefit of a fair consideration thereof by the jury.   The verdict would so indicate.   Plaintiff contends that the facts shown by the abstract are such as would enable this court to determine that the trial court instructed upon a wrong theory of the law.   We think that there are sufficient facts for us to determine the question whether or not the jury was misdirected by the trial court.   In this view of the matter, we shall take up that question, notwithstanding this serious defect in the abstract—for it would be an extremely serious defect in the event, we have to say whether or not the judgment is right, although the jury was misdirected.   However, we shall discuss the general instructions and the theories of the law advanced by them and those contended for by the plaintiff.

III.   The court refused five instructions asked by plaintiff.   The one which outlined plaintiff's theory of the case covers about three large printed pages, and points out all matters of pleading and proof.   It is a labyrinth of details of both proof and pleadings. No average jury could follow the train of thought

contained in it. Even if it be granted that the theory of this instruction was correct, it should have been refused on account of its length alone—leaving out of consideration the comments contained therein upon the pleadings and the evidence. Why it should require three large printed pages for the principal instruction upon the simple facts of this case is beyond comprehension. What is said of the first instruction refused, applies in a way to the other four. They, it is true, are not so verbose, but for the ideas contained, could have well been put in one third of the space. The trial court was no doubt impressed with the same views.

The court gave, upon its own motion, this instruction for plaintiff: "If the jury believe and find from the evidence that defendants, through Barber, the foreman, furnished plaintiff, as a completed appliance for the support of the west end of the scaffolding plank the ladder mentioned in evidence and ordered plaintiff and his fellow-servants to use same, that by means of said ladder said scaffolding plank was not well and safely supported, and was not so secured as to insure the safety of persons working thereon, and if you further find that plaintiff, Hodge and McLaughlin were not charged with the duty of selecting the material and erecting the scaffolding, or the supports thereof, and if you further find that said ladder was not a good and safe support for said scaffolding plank and that by reason thereof, plaintiff while working on said plank was thrown down and injured, then you will find for plaintiff, provided you further find that plaintiff himself was in the exercise of ordinary care in being and working on said scaffolding plank."

Then at the request of plaintiff, gave the following:

"2. The court instructs the jury that negligence, as used in these instructions, means the lack of ordinary care; that the term 'ordinary care' as used in these instructions depends upon the circumstances and

facts of each particular case or situation with reference to which the term is used. It is such care as a person of ordinary care is accustomed to exercise under the same or similar circumstances as those which surround the person whose conduct is in question.

"3. If you believe from the evidence that on the 2d day of July, 1906, the plaintiff was in the employment of the defendants; and that he went out on to the west scaffolding plank in evidence; and that he did so to put up a brace header; and that in doing so he acted in the line of his employment, then you are instructed that, although you may believe from the evidence, that the plaintiff had some reason to apprehend danger from the falling of the ladder in evidence, yet, you are instructed that unless you believe from the evidence that such danger was so obvious, immediate, and glaring as to deter an ordinarily prudent man from going out on to said plank, under the same or similar circumstances as those which surrounded the plaintiff, then the mere act of the plaintiff in going out on to said west scaffolding plank was not negligent.

"If you believe from the evidence that in going out on to the said plank, plaintiff acted as an ordinarily careful man would usually have acted, under the same or similar circumstances as those that surrounded the plaintiff, then the plaintiff was not negligent in going out on to said plank.

"4. The court instructs the jury that the burden of proving that the plaintiff was negligent is on the defendants. You are also instructed that the burden of proving that such negligence, if any, of the plaintiff directly contributed to cause his injuries, if any, is on the defendants; and unless you believe from the evidence that the defendants have proved to your satisfaction, by a preponderance of the evidence, not only that the plaintiff was guilty of negligence, but also that such negligence, if any, directly contributed to

cause his injuries, then you cannot find plaintiff guilty
of contributory negligence.''

Was this instruction of the court, given of its own
motions, a proper declaration of the law? We think so
in view of the evidence in this case. The evidence is
conflicting as to whether plaintiff was to or did have
any thing to do with the construction of these tem-
porary scaffolds. From the standpoint of the defend-
ant the evidence tended to show that the foreman di-
rected the carpenters and helpers to put up these head-
ers, and this order included the making of the neces-
sary scaffolds, upon which to do the work, as well as
the work itself. For the plaintiff, it appears that
Hodge and McLaughlin put up the particular scaffold
upon which plaintiff was injured. From the defend-
ants' witness McLaughlin it appears that both Hodge
and Williams had assisted in fixing these temporary
scaffolds. To quote from the record of this witness's
evidence: ''I have seen Williams on such scaffolding
before. I have put it up before at Hodge's and Wil-
liams's request. He would say, 'Let us shift the scaf-
folding.' Hodge and Williams helped me to move and
put up the scaffold. Williams had helped fix up this
ladder scaffolding before he was hurt. Williams used
a spike maul with a handle three or four feet long and
three or four pounds weight. Williams and Hodge did
not wait for orders from Barber to move and set up
the ladder.''

It also appears that by bracing a ladder the scaf-
folding would be safe and that the defendants had at
hand plenty of good material out of which to make
scaffolds. Again the evidence of Barber shows the
situation of Williams to this work of scaffold building.
Barber, among other things, says: ''I selected Hodge
and Williams to put in the header work because they
were experienced and gave them McLaughlin as a
helper. I showed them the line of headers and told
them to put them in, to get their material and get it

on. That was all. I had several, three or four ladders there. It was ninety-off by one hundred and twenty feet. There was plenty of material there, all of good quality and in all dimensions. I told them what to do and to go ahead; I never pointed out any one thing for them to do. I thought it unnecessary. In the course of header work, when it was just starting, we set up a couple of 2 by 4's fastened together with a bar across the top. It was abandoned in their thought of going along with their work. No orders were given to abandon it, and use the ladder. I told them what to do and it was left to them as to getting up that piece of work. Hodge and Williams were experienced and competent. The ladder scaffolding had to be moved from time to time. They didn't wait for me to tell them to move it. They knew what to do and I did not have to stay with them. They built the scaffolding in the time they were paid for the same as for other work. I gave the orders as to what part of the construction they were to complete. . . . *It was part of Williams's work as much as Hodge's to build this scaffold. I gave them no directions about how they should build ladder scaffolds. I left the minor details to them. I considered that that was all that was necessary, they being experienced.* I told them McLaughlin would help them. He understood that he was to help them.''

Plaintiff says that he had nothing to do with putting up this ladder scaffolding and especially the one from which he fell. He admits that he helped put up other scaffolds. Upon the question therefore we can call the testimony conflicting. Taking into consideration all of the evidence we think this instruction fairly presented plaintiff's case.

From the evidence the jury could well find that it was Williams's duty to assist in the construction of these temporary scaffolds. The jury had to find that Williams's co-workers, Hodge and McLaughlin, did

construct the scaffold, and that Barber was not present when it was constructed. It is a fair inference from the evidence that Barber never saw this scaffold from the time of its erection until after its fall. This case is different from one where the principal has scaffolds erected, and then directs servants who have not participated in the erection thereof to go thereupon and work. Here there is evidence from which the jury could find that the plaintiff had a double duty to perform, i. e., (1) to construct a safe and suitable scaffold upon which to work, and (2) then to do the work required. With this dual duty imposed upon plaintiff, can it be said that he could be guilty of negligence in constructing the scaffold, and then hold his principal liable because he fell from a scaffold, which he himself helped to construct? We think not. If it was his duty to assist in the construction of the scaffold his situation would not be changed. Under the statute, the defendants had the right to hire Williams to make a scaffold from which he could work, as well as to hire him to work thereon. This under their evidence, they did. Justice has not been so far thwarted by this statute as to make it necessary to hold that although a servant is hired to build a scaffold and then work on the same, yet the master is liable to the servant, although such servant is negligent in constructing the scaffold. In the case before us the ladder moved toward the south when it fell from this west wall. There was timber there with which to have braced it upon the sides as well as at the foot, but this was not done. Under defendant's evidence the doing of these things was a part of the plaintiff's duties. That the scaffold could have been made safe, although a ladder was used as a part of the scaffold, is apparent even to the unlearned in carpenter's work.

Upon the main issue the instruction given fairly presented the case, and it becomes unnecessary to un-

dertake to analyze the verbose instruction asked by the plaintiff.

In Forbes v. Dunnavant, 198 Mo. 193, we held that one engaged in the construction of a scaffold could not recover for the negligence of a fellow-servant. Shall we now say that, if it was the duty of Williams and Hodge with their helper to construct their own scaffold, and they or either of them negligently construct it, and injury results from working thereon, either of the parties named could recover for such injury? We think not.

In Bowen v. Railroad, 95 Mo. l. c. 277, BLACK, J., has well said: "A servant is not a mere machine, employed to drive a nail here or a spike there, where directed by the master or some one representing him. Many things involving the exercise of judgment may properly be left to the servant. Hence it has been held, where the master employs competent workman, and provides suitable material for staging and intrusts the duty of erecting it to the workmen, as a part of the work which they are engaged to perform, that he is not liable to one of the workmen for injuries resulting to one of them from the falling of the staging. The negligence in such cases resolves itself into negligence of a fellow-servant; and the principle has ben applied under a variety of circumstances. [Kelley v. Norcross, 121 Mass. 508; Killea v. Faxon, 125 Mass. 485; Armour v. Hahn, 111 U. S. 313; Peschel v. Railroad, 62 Wis. 338.] It is just as well settled that if the master undertakes to furnish structures to be used by the servant in the performance of his work, the master must use due care in the erection of the structures, and, if there is negligence on his part, or negligence on the part of some one representing him in that respect, he is liable for injuries sustained by the servant."

In this view of the law, this instruction was well enough.

IV. Indeed, we are not so certain but that the court went too far for plaintiff in leaving to the jury to decide whether or not the ladder was furnished as a "completed appliance." The action was under the statute. The "completed appliance" so far as this case is concerned, under this statute, was the scaffold as a whole, and not the parts thereof. It is clear that the ladder was only to be used as a part of the material out of which to make the scaffold. For defendant the evidence shows that there were several ladders around the building from which to make selection, and also that there was ample good material to use in connection therewith—material for braces to the ladder, as well as material for the platform upon which the carpenters were to stand in spiking the "headers."

Braces upon the sides of this ladder toe-nailed to the floor would have prevented the ladder from moving north or south. A strip nailed on the floor at the bottom of the ladder would have prevented it from sliding on the floor. With these precautions, it does not require an expert to see the absolute safety of the scaffold.

V. The chief complaint made by plaintiff as to the legal theories adopted by the trial court, is as to instructions given alleged to be upon the question of the negligence of a fellow-servant. Plaintiff urges that the doctrine of the negligence of a fellow-servant has no place under this statute. Whilst running through several of the instructions given for defendants the matter is fairly presented by instructions 7, 8, 10 and 15, which read:

"7. The jury are instructed that if they find and believe from the evidence that the defendants or their foreman, Barber, hired the plaintiff and Hodge as carpenters to do the necessary carpenter's work and among other things to put up headers, and hired others as carpenters' helpers to help and wait on them, and

furnished lumber, nails and ladders, and left it to the carpenters and their helpers to use this lumber and ladders in making their own temporary scaffolds for use by the carpenters in nailing these headers, and that Hodge and McLaughlin put up the scaffold on which plaintiff stood when he fell and in so doing McLaughlin put the ladder up against the brick wall without nailing, bracing or securing the same so that it would not slide or fall, and the ladder so put up by McLaughlin slid and fell and plaintiff was thereby injured, then the verdict must be for the defendants.

"8. The court instructs the jury that if defendants furnished plaintiff, Hodge and McLaughlin reasonably good and sufficient material for the construction of scaffolding, or reasonably good completed scaffolding, then defendants are not liable for the failure, if any, of Hodge, plaintiff or McLaughlin to move or construct said scaffolding with ordinary care.

"10. The jury are instructed that defendants are not responsible for the mere failure of McLaughlin to brace or secure the ladder so that it would not fall with the plaintiff.

"15. The court instructs you that if you shall believe from the evidence that the defendants provided suitable material for the building of the scaffold from which plaintiff fell and entrusted the duty of erecting it to the workmen as a part of the work which they were engaged to perform, and if you shall believe that the scaffold was erected by Hodge and McLaughlin, you shall then find your verdict for the defendants, even though you may believe that Hodge and McLaughlin were careless in the way in which they erected the scaffold."

A reading of these instructions shows that they are based upon the theory that the workmen were to construct their own scaffolds. Not only so, but that Williams was to be a participant in such work of construction. Defendants' evidence so shows.

We do not construe our statute to mean that a person putting up a building may not employ the same persons to put up their own scaffolds, and if he does so employ them that the doctrine of the negligence of a fellow-servant may not be invoked by the master.

In Rotondo v. Smyth, 92 App. Div. 153, the New York Court had up practically the same question here involved. That court said: "It is certain that the scaffold did not comply with this law; but it seems to us, in view of the evidence that it was constructed by the workmen who were to work upon it and was in their charge and under their control, that such scaffold did not come within the provisions of the act referred to, so as to charge the defendant with negligence for want of compliance with the statute. The men who were to do the work themselves constructed it, and the defendant had nothing to do with it and did not furnish the scaffold as a scaffold. It was prepared by the painters themselves; and, therefore, if there was any negligence in its construction, they were liable for it and not the defendant. It is further claimed that the statute was not complied with in that the scaffold was not so fastened as to prevent the same from swaying from the building or structure. If this portion of the law was not complied with, it was the fault of the men who were working upon the scaffold. They were the ones whose duty it was to fasten it in the manner required by the act. The defendant, the employer, was not responsible for the manner in which they conducted themselves in the doing of the work. They were bound to see, under the circumstances, that the scaffold was properly secured, and if it was not so secured it was the fault of the workmen themselves, and no negligence on that account is to be imputed to the defendant."

To a like effect is the opinion of the United States Circuit Court, Southern District of New York, in the case of Hutton v. Contracting Co., 139 Fed. 734. In

this case, the injury was received by one of three masons and two helpers, working together as one crew. They worked upon a scaffold, which from time to time had to be moved as the work at given places was completed. The scaffold was taken down by the helpers, and by them removed to the adjacent place, and re-erected. When so erected, the masons re-mounted the scaffold and resumed their work. It was the duty of the helpers to assist the masons generally in their work. Hutton was injured by the scaffold falling. The facts of the case are very similar to the case at bar. In the case at bar, one of the carpenters helped in the erection of the scaffold, whilst in the New York case the work was done by the helpers. In this our case is somewhat stronger for the defendant, in view of the facts shown as to the duty of both carpenters as to the construction of their own scaffolds. Discussing the New York Statutes, the Federal court in the case supra, said: "If it had been the purpose of the statute to make the master liable to his servent for all the negligent acts of his other servants in the same employment, including the fellow-servants of the servant injured, that intention could have been, and doubtless would have been, expressed in a few words, and so plainly as to be unmistakable. Such a rule of liability would be so radical a departure from existing law, and introduce into the large industries of the country such incalculable hazards of loss to the employers of labor, that the purpose to adopt it is not to be attributed to the Legislature in the absence of plain language to that effect."

Hutton was nonsuited on the ground that his injury was through the negligence of a fellow-servant, and his motion for new trial was by the opinion, supra, overruled.

We are referred to the case of Stewart v. Ferguson, 164 N. Y. 553, but the exact question here involved was not in that case. In that case the facts stated do

not show that the scaffold was erected by the workmen for their use, as in this case.

We are not of opinion that the statute of this State precludes the defense of the negligence of a fellow-servant in cases where the principal has left the construction of an appliance to the workmen, as indicated by the evidence of defendants in the case at bar. In this case, under evidence introduced by defendants, it was the duty of all three men to see that they and each of them properly erected the scaffold upon which they were to work. It was as much the duty of Williams to see that the scaffold was safely erected, as it was of the other two men. If he neglected this duty he cannot recover. We therefore conclude that these instructions outlined the proper theory of this case.

VI. There are several other criticisms of the wording of the several instructions given for the defendant. These matters we have examined, but hardly think that they merit space in the opinion. Were it not for the fact that the plaintiff in a half-way manner denied that he had anything to do with the construction of the scaffolds, we would say that defendant's demurrer to the evidence should have been sustained.

Some suggestion is made that a trestle would have been safer than a ladder in the construction of these temporary structures, but this is not sufficient to help the plaintiff in his cause. The appliance struck at by the statute is the scaffold. The trestle is not the scaffold, but only one constituent part thereof. Had these workmen chose to use trestles in the construction of their scaffolds, the evidence shows that the material was at hand with which to make them, as there was material with which to brace the ladder. Plaintiff's case is without merit under the great weight of the evidence, and as stated above, but for some half-

hearted denials found in his own testimony, ought not to have been submitted to the jury.

The judgment of the lower court is affirmed. All concur, except *Valliant, J.*, absent.