STATE OF MISSOURI at the Relation of HENRY J. HORSPOOL, Relator, v. GEORGE F. HAID, WILLIAM DEE BECKER and SIMON G. NIPPER, Judges of the St. Louis Court of Appeals.—65 S. W. (2d) 923.

Division One, December 6, 1933.

*E. H. Robinson, A. E. L. Gardner* and *Allen, Moser & Marsalek* for relator.

*Campbell Allison, Joseph A. Falzone* and *Orval C. Sutter* for respondents.

FERGUSON, C.—This is an original proceeding in this court, by certiorari, to review the opinion and judgment of the St. Louis Court of Appeals in the case of Forsythe v. Horspool, 49 S. W. (2d) 687, on the ground that same is in conflict with certain rulings of this court. Forsythe, a carpenter was employed by Horspool in the construction of a dwelling house in St. Louis County and while engaged in that work was injured when the platform or floorboards of a scaffold upon which he was standing "tilted" and fell. Forsythe brought an action for damages and recovered judgment for $3,500. Upon appeal by defendant Horspool (relator herein) to the St. Louis Court of Appeals that court affirmed the judgment of the circuit court, Forsythe v. Horspool, 28 S. W. (2d) 401. That opinion was reviewed here on certiorari (State ex rel. Horspool v. Haid, 328 Mo. 327, 40 S. W. (2d) 611) and the record quashed. The Court of Appeals then promulgated the opinion which is the subject of this proceeding (49 S. W. (2d) 687) again affirming the judgment of the circuit court.

The substance of the pleadings is set out in the foregoing opinions and the following facts are stated in both opinions of the Court of Appeals:

"The evidence discloses that plaintiff received his injuries on the date mentioned in the petition. He was a carpenter, working on a building, and was engaged in placing shingles on said building. While so placing these shingles, he was working upon a platform or a scaffold, engaged at the time with another carpenter. The building was about thirty-two feet long, and the scaffold extended approximately along the entire length of the building. The scaffold was formed by putting up certain uprights, about eighteen feet high, a few feet from the building, with two in between them. The distance between the uprights was approximately ten feet. Boards, called 'lookouts,' extended from each upright to the building. On these lookouts, boards were laid to form each depth of the platform or scaffold. The uprights and lookouts were put up under the order and direction of defendant's foreman. Plaintiff and his coworkers put the boards on the lookouts. The platform was made of two boards about sixteen feet in length and two inches thick, lying upon the lookouts, with a third similar board about eight feet long lying on top of the other boards in the middle space. Each sixteen-foot board extended from each end of the building to near the center of the scaffold. In the middle space the third board was put on top of the other long boards. A short time prior to plaintiff's injury, he was at one end of the platform and his coworker at the other, working towards each other. While they were thus working, bundles of shingles were passed out of a window and placed upon this platform, about the middle thereof, by other employees. When plaintiff and his coworker came to the

middle part of the scaffold, near where the shingles were, and with the shingles between them, the platform gave way in the middle, causing plaintiff to fall to the ground. . . .

"One of these bundles of shingles would weigh from 100 to 125 pounds. . . .

"In constructing the platform . . . one sixteen-penny nail was placed in each end of the middle board to keep it from slipping.
. . .

"There is evidence to the effect that the platform itself was sufficient for the purposes for which it was intended. It was sufficient to hold the weight of these two men, but when some three or four extra bundles of shingles were placed thereon, not by plaintiff and his coworker, but by defendant, it was too much of a load for the scaffold to hold. . . ."

While it inferentially appeared from the statement of facts in the first opinion it is definitely stated in the second opinion of the Court of Appeals that the 16-foot boards were not nailed or fastened to the lookouts at the ends or nailed or fastened to the lookouts at any point but were merely laid upon or across the lookouts.

At the close of plaintiff's case and again at the close of the whole case defendant requested an instruction in the nature of a demurrer to the evidence, which the trial court refused. In the light of the above facts this court held in State ex rel. Horspool v. Haid et al., supra, that the ruling of the Court of Appeals, in its first opinion, "that a case was made for the jury is in conflict with" decisions of this court in certain cases there cited. In discussing the evidence, supra, which was set out in the first opinion, and restated in the second opinion, this court said:

"That the scaffold was negligently constructed, according to the evidence set out in the opinion, cannot admit of doubt. The building was thirty-two feet long; a scaffold was formed by setting uprights about eighteen feet high a few feet from the building. Boards called 'lookouts' extended from those uprights to the building. Thus there were four uprights, one at each end and two between, presumably as the safest way, at equal distances, about ten feet eight inches apart, to cover the thirty-two feet. That these uprights and the lookouts by which they were attached to the building were secure we may infer, for nothing is said to the contrary. Upon these lookouts were placed boards sixteen feet long coming from each end and meeting in the middle. Each board would be supported by two lookouts resting on one at the end of the building and extending five feet or more beyond the other, to the middle where the boards met. These boards were two inches in thickness; their width is not stated. It is manifest that a sufficient weight upon the inside end of either of these boards would tend to tilt it up unless it were fastened down at the

outer end at the corner of the building. Nothing is said in the opinion as to any fastening which would hold down the end to prevent that tipping up. Evidently one or both did tilt up causing the plaintiff to fall. These boards were placed there by the plaintiff and his colaborer. Upon them along the middle of that platform they placed an eight-foot plank. Necessarily it would not extend all the way to both inside lookouts which supported the 16-foot planks. The plaintiff testified that he fastened that 8-foot plank to the others by a 16-penny nail 'to keep it from slipping.' It is not said that these nails would have the effect to keep the other boards from tipping up, and there is nothing in the evidence to indicate that the inside board, eight feet long, slipped. Thus the scaffold was negligently constructed by failure to fasten down the ends of the 16-foot boards, or by failure to have the middle board of sufficient length to prevent that tipping up. There is no escaping the conclusion that it fell by reason of those defects. And it makes no difference whether the material was selected and the scaffold built by the plaintiff alone or in conjunction with a fellow-servant. The plaintiff was charged with the duty of building the scaffold. That was a part of his work. There is no complaint that proper and sufficient material was not at hand to make the scaffold secure. The relator did not know and could not know how plaintiff had constructed it, or failed to make it secure, and was not responsible for that insecurity.

"The opinion says a witness for the defendant testified that the platform had not been properly constructed because the boards were not properly nailed to the lookouts and that is the only reasonable inference to be drawn from the evidence for the plaintiff recited in the opinion. It was the scaffold boards which fell—not the lookouts, nor the upright. The ruling of the Court of Appeals that a case was made for the jury is in conflict with Williams v. Ransom, 234 Mo. 1. c. 69, 136 S. W. 349; Forbes v. Dunnavant, 198 Mo. 1. c. 209-211, 95 S. W. 934; Guthrie v. Gillespie, 319 Mo. 1. c. 1148, 6 S. W. (2d) 886. It is said further in the opinion that bundles of shingles were placed upon the scaffold; that those shingles would weigh from 100 to 125 pounds each; that there was evidence that the platform was sufficient to hold the weight of the two men, but when three or four extra bundles of shingles were placed thereon, not by plaintiff and his coworkers, but by the defendant, it was too much of a load for the scaffold to hold. This is the theory upon which the Court of Appeals reached the conclusion that the scaffold was safe enough, but was made unsafe, not by the plaintiff and his coworker, but by some other employee.

"Nothing is stated in the evidence as to why those extra shingles were placed there. The reasonable inference is that they were placed

there for the use of the plaintiff and his coworker because they were standing on the scaffold nailing shingles on the roof. It is not indicated anywhere that those shingles were not necessary for their purpose. In building the scaffold for their support the plaintiff and his coworker were charged with the duty of building one that would serve their purpose under all conditions which naturally would arise. The shingles were passed out of a window while the men were at work and placed right before their eyes. No evidence is mentioned to indicate that plaintiff and his coworker did not see them, or did not know they were being placed there. The natural inference is that they did know the shingles would be and were passed out of the window and placed upon the platform. They must have known that the shingles would have to be placed somewhere for their use, and it is not intimated that there was any other place to put them.

"The inference by the Court of Appeals that the shingles were a sufficient added load to make the boards tip up does not relieve the plaintiff of his duty to anticipate that the load would be increased in exactly the way it was, and to construct the scaffold to meet that contingency.

"On the other hand, the defendant, by causing the shingles needed in the work by the plaintiff to be placed out upon the platform, could not have anticipated that the scaffold was so insecure as not to hold them up. [Hunter v. Candy Co., 307 Mo. l. c. 670-671, 271 S. W. 800.]"

In its last opinion (49 S. W. (2d) 687, 689), now before us for review, the Court of Appeals adds to the statement of the evidence in the case made in its first opinion, and which we have set out, supra, the following:

"The evidence on the part of the plaintiff discloses that neither he nor his coworker had any knowledge of these shingles being placed on the scaffold. They were located near and working on the roof, and the evidence discloses that they could not see and that they did not know that shingles were being placed on the scaffold. The evidence further discloses that the scaffold had been tested by the weight of two or three men to show that it was sufficient and substantial to hold all weight that was necessarily expected thereon. Plaintiff stated that he did not know anything about the shingles being placed thereon, for, if he had known, the scaffold never would have fallen, for he would have moved the shingles. Some one had placed the shingles on it through an upstairs window without the knowledge of the plaintiff or his coworker, and the evidence also discloses that they did not expect or anticipate that this would be done. Plaintiff also testified that the boards used were all they had to use for this platform."

In this connection the opinion makes this observation and thereby in effect again holds that defendant's demurrer to the evidence was properly overruled by the trial court and that plaintiff made a case for the jury.

, "The Supreme Court . . . in quashing our record, held that the facts, as disclosed by our original opinion, showed that plaintiff was charged with the duty of constructing a safe scaffold, and that he had not done so. Therefore, our opinion was in conflict with certain decisions of our Supreme Court. It will be observed, however, that, in the opinion of our Supreme Court quashing the opinion of this court, it is stated that there was nothing in the evidence, as shown by our original opinion, that no proper and sufficient material was at hand to make the scaffold secure. The opinion further states that no evidence is mentioned to indicate that plaintiff and his coworker did not see these shingles, or did not know that they were being placed there. This evidence was inadvertently omitted from our original opinion. But, in view of the fact that the record shows these facts, we deem it fair to plaintiff to state them at this time, and in view of the fact that the record does show these additional facts, we think that the reasons for quashing the original record in this case have been obviated."

However, the essential and controlling facts upon which our conclusion in State ex rel. Horspool v. Haid, supra, is based remain unaffected by the additional evidence set out in this last opinion of the Court of Appeals making the same rules and principles of law declared in our former opinion applicable, and therefore this opinion of the Court of Appeals, in conflict not only with the decisions of this court cited in our former opinion but also with our ruling therein. In State ex rel. Horspool v. Haid we pointed out that the first opinion of the Court of Appeals is in conflict with our ruling in Williams v. Ransom, 234 Mo. 55, 1. c. 69, 136 S. W. 349. The same distinction which exists in that case is found in the cause of Forsythe v. Horspool and is thus stated in the language of the Williams case: "This case is different from one where the principal has scaffolds erected, and then directs servants who have not participated in the erection thereof to go thereupon and work." In the Forsythe case there was no defect in the uprights or the lookouts; those parts of the scaffold were secure. The tilting or tipping of the floor boards was the cause of plaintiff's fall and injury. As said in our former opinion on certiorari "the plaintiff was charged with the duty of" constructing this platform; "that was part of his work;" and the undisputed evidence is that pursuant to that duty he and his coworker did construct it in the manner described in the statement of the evidence, supra, so that the two 16-foot boards were merely laid upon

or across the lookouts without being nailed or fastened to the lookouts at the outer ends or to the inner lookouts. "It is manifest that a sufficient weight upon the inside end of either of these boards would tend to tilt it up."

The last opinion of the Court of Appeals says that plaintiff testified "that the boards used were all they had to use for this platform." Even so with the material used, the two sixteen-foot boards and an eight-foot board, it is perfectly obvious that had these heavy boards been securely nailed to the lookouts at the outer ends they would not have tilted or tipped when the weight was concentrated near the middle of the platform. In building the platform with the material used and in view of the work to be done thereon, the exercise of the slightest care or ordinary precaution required that the long boards be made secure against tilting and by doing so it is manifest the platform could have been made safe. In the Williams case, supra, the scaffold used by the plaintiff and his coworker, both experienced carpenters, was made by placing one end of the platform board, upon which they stood while working, on a cross-timber securely nailed with the other end resting upon a rung of a ladder which was placed so as to lean against a wall of the building. The ladder slipped and fell and plaintiff was thrown to the floor sustaining the injuries complained of. This court said:

"That the scaffold could have been made safe although a ladder was used as a part of the scaffold is apparent even to the unlearned in carpenter's work. . . . . Braces upon the sides of this ladder, toenailed to the floor, would have prevented the ladder moving north or south. A strip nailed on the floor at the bottom of the ladder would have prevented it from slipping on the floor. With these precautions it does not require an expert to see the absolute safety of the scaffold."

The cases hold that a servant cannot recover for injury sustained in the falling of a scaffold constructed by him for his own use when by the exercise of ordinary care, with the materials at hand, the scaffold could have been made secure and safe and his injury was directly and proximately due to his own failure to exercise such care. Neither opinion of the Court of Appeals indicates that nails or fastenings of sufficient size and strength to securely fasten the ends of the long boards and secure them to the lookouts and thereby eliminate the very obvious danger of tilting or tipping when weight was applied to the middle part of the platform were not at hand and available to plaintiff and his coworker in constructing the platform.

We noted in our opinion in the former certiorari proceeding that respondents first opinion did not indicate any evidence to the effect that there was any other place, than this platform, upon which the

shingles could be conveniently placed for the use of plaintiff and his fellow carpenter or that it was intended that the shingles be supplied at some other place or in some other manner. We said: ''The reasonable inference is that they (the shingles) were placed there (on the platform) for the use of the plaintiff and his coworker because they were standing on the scaffold nailing shingles on the roof. It is not indicated anywhere that those shingles were not necessary for their purpose. In building the scaffold for their support the plaintiff and his coworker were charged with the duty of building one that would serve their purpose under all conditions which naturally would arise. . . . The natural inference is they did know the shingles would be . . . placed upon the platform. They must have known that the shingles would have to be placed somewhere for their use, and it is not intimated that there was any other place to put them.'' The same facts upon which the foregoing inferences and conclusions were based appear in the last opinion of the Court of Appeals and are not in any way altered or affected by the additional evidence set out therein nor does anything appear in either opinion showing that relator, his foreman or his employees, who placed the shingles upon the platform, knew or could have known that plaintiff in constructing the platform, had ''failed to make it secure.''

Respondent's last opinion, in the statement of additional evidence, says that plaintiff testified he could not see and did not know that shingles were being placed on the scaffold and ''if he had known, the scaffold never would have fallen for he would have moved the shingles.'' Our former opinion observes that: ''The shingles were passed out of the window while the men were at work and placed right before their eyes. No evidence is mentioned that plaintiff and coworker did not see them.'' Upon a reading of that opinion it will appear, we think, that this comment does not influence the reasoning of the opinion nor is the circumstance mentioned one of the facts upon which the conclusion of the court, which precedes it and declares that the holding of the Court of Appeals that a case was made for the jury conflicts with our prior decisions there cited, is based. This platform was the width of one board (measurement not stated); it ran straight across the front of the building and plaintiff and his coworker worked from opposite ends toward the middle of the platform where the shingles were placed. When they arrived at that point the outer ends of the long boards fell. But according full credence to plaintiff's statement or conclusion nevertheless it does not serve to mitigate or exculpate plaintiff's negligence in placing and leaving the platform boards loose and unsecured upon the lookouts. The statement that he would have removed the shingles had he seen them at that place on the platform but emphasizes his own realization of the

dangerous manner in which he and his coworker had constructed the platform.

We do not discover anything in the facts added by respondent's last opinion which allows a different conclusion from that stated in our former opinion on certiorari and we must therefore hold that this second opinion of the Court of Appeals, in holding that a case was made for the jury, is also in conflict with our decisions cited in our former opinion. [State ex rel. Horspool v. Haid, supra.]

The record is quashed. *Sturgis, C.,* dissents; *Hyde, C.,* concurs.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.