ALBERT MOSELY v. FRANCIS SUM, JR., and EUGENIA WISSMATH, Appellants.—130 S. W. (2d) 465.

Division One, July 7, 1939.

*George A. Hodgman* and *Robert S. Lindsey* for appellants.

William R. Schneider for respondent.

DALTON, C.—This is an action for damages on account of personal injuries sustained by plaintiff on August 7, 1934, while cleaning wall paper in a flat in the Sum Building. Plaintiff was employed as a janitor and maintenance man in the said building. He was injured by the collapse of a scaffold constructed by him from a board and three stepladders. The scaffold was errected in a hall for the purpose of reaching a portion of the wall paper in a 4 x 4 foot space or opening where the ceiling was several feet higher and the walls surrounding the opening extended up to a sky light. Plaintiff sustained a compressed fracture of the twelfth thorasic vertebra and other injuries. Suit was instituted against four defendants. A nonsuit was taken as to one at the close of plaintiff's evidence and the jury returned a verdict for plaintiff for $9668.15 against two of the remaining defendants. These defendants, Francis Sum, Jr., and Eugenia Wissmath, have appealed.

Plaintiff charged that defendants Ida Sum Wissmath, Eugenia Wissmath, Francis Sum, Jr., and Will C. Wissmath Realty Company owned, controlled and operated the building and that plaintiff was employed by said defendants. The answer of defendants denied both the ownership of the building and the employment of plaintiff, and alleged that the legal title to the building at the date of the injury was in Mina Sum; that plaintiff was employed by Mina Sum; that said employer had elected to come under the provisions of the Missouri Workmen's Compensation Act and was under it at the time of plaintiff's injuries; and that plaintiff had accepted compensation from

said employer in the sum of $362, and the payment of all medical, hospital, nursing and X-ray expenses from said employer under the terms and provisions of said Missouri Workmen's Compensation Act.

Briefly the negligence charged in the petition is (1) that defendants negligently ordered plaintiff to do the work with stepladders when they knew that the one that broke was defective and not reasonable safe for the purpose; (2) that defendants negligently provided plaintiff with an old, weak and defective ladder with which to do said work; (3) that defendants negligently failed to warn plaintiff of the danger in using said ladder; and (4) that defendants negligently assured plaintiff that the ladder was safe for the purpose plaintiff was required to use it. Appellants make numerous assignments of error. We deem it necessary to notice only one. Appellants contend that there is no evidence that plaintiff was in their employment or that they furnished the ladder or were guilty of negligence and further urge that plaintiff was guilty of contributory negligence as a matter of law. Said issues are presented by demurrers to the evidence as offered at the close of all of the evidence. We shall consider the last point.

■ "The defense of contributory negligence is available, though not pleaded, if respondent's proof shows him to be guilty of contributory negligence as a matter of law which would bar recovery." [Cash v. Sonken-Galamba Company, 322 Mo. 349, 17 S. W. (2d) 927, 929; Buesching v. Gas Light Company, 73 Mo. 219, 229.]

■ In determining whether or not a submissible case was made for plaintiff, his evidence must be accepted as true together with all reasonable inferences that may be drawn from it. Defendants' evidence showing facts contrary to plaintiff's evidence and all unfavorable inferences must be rejected. [Willhauck v. Chi., R. I. & P. Ry. Co., 332 Mo. 1165, 61 S. W. (2d) 336, 338.]

Plaintiff's case rests largely on his own testimony. Plaintiff testified that he had worked for the Sum family for more than thirty years; that for more than twenty-five years he had been employed as a janitor and maintenance man at this particular building; and that he resided therein for fifteen years. He was employed by Francis Sum, Sr., as a janitor at the building prior to 1912 and continued there during the succeeding years, and with the subsequent owners of the building. At the time of plaintiff's injuries defendant, Will C. Wissmath Realty Company was in charge of the building, renting apartments, collecting rents, making repairs, giving orders to plaintiff and paying his salary.

On August 3, 1934 plaintiff received a letter from the Will C. Wissmath Realty Company, per Will C. Wissmath, directing plaintiff "to clean the balance of the wall paper" at 3192 A, South Grand, an apartment in the Sum Building, and to do certain other cleaning. The letter contained no instruction as to how the work should be done

or what appliances should be used and none of the defendants ever gave such instructions. Plaintiff did just what he wanted to do and as he thought best. His only instruction was as to the work to be done. Plaintiff testified, "Q. Now when you got this letter from Wissmath Realty Company directing you to do this work did you call up Miss Huck and talk to her up there? A. No, sir. . . . Q. Did you call her up and notify her that you did not have the equipment to do it. A. No, sir. Q. Did you notify any of the other defendants in this case that you didn't have any equipment? A. No, sir. Q. Did you talk to any of the defendants here about whether you did or did not have the equipment to do this work? A. No, sir. Q. Then, as I understand it, you didn't have any conversation with any of the defendants with respect to the equipment to do this work or how it was to be done? A. None whatever." After he got the letter he did not talk to anybody about any ladder. With reference to who furnished the stepladder, which is alleged to have collapsed in the said scaffold, plaintiff testified that he did not know who originally provided this stepladder. He was asked, "Did *any of these people* that you have mentioned here either Will C. Wissmath Realty Company or Francis Šum, Jr., or Eugenia Wissmath or Mrs. Ida Sum Wissmath, did *any of them* provide you with any equipment with which to clean that wall paper? A. The ladder that was there when I went to work at the building." The particular persons furnishing the ladder were not named by plaintiff. Plaintiff referred to this ladder as an eight foot stepladder with seven steps and the top step. He said, it had been at the building ever since he "got there," and it was there when he "got there;" that the ladder belonged to the building; that the ladder had been there to his knowledge about twenty-five years; that he used it at different times in every cleaning season, about twice a year in cleaning five flats, and used it in the same way he used it at this time. He used his own ladders at other times.

As to the condition of this ladder plaintiff testified that it was weak because it was wobbly; that the irons were rusted that held the ladder together to keep it from spreading, that is, "the things that hold the front and back together," the legs or back to the ladder or steps; that they worked at the time; that he did not know how to repair the ladder at the top where the irons were rusty; that the ladder was weak and old; that he had repaired the ladder by putting a strap on the bottom; that he also put a rope at the bottom; that after he put the straps and rope on the ladder he used it; that there was a lower strap on the back where the cross-pieces go; that he had put a piece of lath across there, down at the bottom at the back to serve the same purpose as the cross-strap; that the lath and cross-strap were in position when he used the ladder; that both the front and back set of legs "were all wobbly;" that the legs were all right but wobbly; that he thought it was safe and thought it was a safe ladder to use. On be-

ing asked whether it was safe and bad, he said, it was bad. He said, "I just took a chance on it, I knew it wasn't safe, but I just took a chance on it."

With reference to the use plaintiff made of this ladder he testified that a portion of the wall paper to be cleaned was near the sky light and fifteen feet above the floor; that after he received the letter to clean the wall paper he borrowed a six foot stepladder on his own initiative from a hardware man; that he borrowed stepladders whenever he wanted to from other people; that he had a six foot stepladder of his own and a twelve foot extension ladder, a straight stepladder with rungs and an extension, which ladders were not in use; that the ladder which belonged to the building had been in plaintiff's charge and care; and that it had not been out of his possession since he came to the building. Plaintiff's ladders, and the stepladder which he borrowed, were in good shape and perfect condition.

To reach the wall paper near the sky light plaintiff set up a scaffold in the hall, by placing the borrowed stepladder to the east, and the stepladder belonging to the building to the west, with the steps of the ladders facing each other, and then placed a twelve inch board ten or twelve feet long across from the center of the fifth step of one stepladder to the center of the fifth step of the other. The ladders were separated by the length of the board. Plaintiff then took his own six foot stepladder up on this board, extending between the other stepladders and with the bottom of his ladder on the board he leaned the top of his ladder against the north wall. This board was about a foot and a half away from the wall and the ladders supporting it were not braced and did not touch the walls. (The petition alleged that it was necessary to make such a scaffold from stepladders to do the work he was required to do.) Plaintiff then proceeded up to the fifth step of the top ladder and began his work. He was reaching high with his right hand and holding the ladder with his left hand. As he did so, he says, "I heard something snap and I heard something make a noise and down I came. . . . The west ladder snapped and we came down." The board and the ladder he was standing on tilted to the west, toward the old ladder, causing him to fall. "Q. You don't know whether it slid or threw you out or whether it broke? A. I came down so fast I didn't know." He did not examine it later. On further direct examination he said his ladder did not slip off the board.

Plaintiff had fixed this kind of scaffold on numerous occasions before by arranging stepladders with a board between them and with a stepladder on the board and leaning the top stepladder against the wall. Plaintiff fixed the arrangement of ladders himself, nobody helped him. With reference to plaintiff's further knowledge of the condition of the ladder he testified that in April, 1934, Miss Huck of the Realty Company asked him to clean the tin ceiling of a hall in

one of the offices in the building. The ceiling was twelve feet high. He told her that "the ladder was bad" and he couldn't do it, so she sent someone else. In May or June, 1934, a rope broke in the sky light and plaintiff told defendant Francis Sum, Jr., the ladder was bad, using the words, "my ladder is bad and I need a taller ladder."

Plaintiff's brother visited the scene of the accident a few hours after it happened. This witness testified that he saw a six or seven foot old ladder, downstairs at the foot of the steps which he described as "all rusty and had old ropes tied around it and everything, and it was real bad and old, and some parts was broken at the bottom and broken off, and at the top it was broken;" that at the top a big screw was hanging in the iron that had come out through the hole in the wood, it was in the top part that holds the legs on, the iron or tin with the hook that keeps the ladder from spreading. According to this witness, the part up at the top at the left hand side had come loose, and "right down at the bottom, that was busted loose." "The top where the two ends go in (was broken) and spread open." He saw ropes tied on each side of "the things that keeps the ladder from spreading or closing."

From this evidence it appears that plaintiff selected his own methods for his work. He was under no foreman or superintendent. The only orders he received were as to the results desired, to-wit: ". . . We have rented 3192A, South Grand Avenue to Mrs. Zehe and she wanted to get in as soon as she possibly can. We will have the kitchen papered, . . . Now we would like for you to clean the balance of the wall paper, and wash the woodwork for her and clean the windows." Plaintiff was entirely familiar with this step-ladder. He had had it in his possession and care for more than twenty-five years. He had repaired it on various occasions and in various ways. He had full knowledge of its age, and of its defective and unsafe condition. He was familiar with stepladders generally, he owned, borrowed, used and repaired them in connection with the business in which he had long been engaged. He had set up the same kind of scaffold on numerous occasions. With a twelve foot extension ladder at hand, and with two stepladders, available and in perfect condition, he placed this defective ladder as one of the supports for a scaffold he purposed to build. The defects of this ladder were known to plaintiff, and as described by plaintiff and his brother, they were clearly open to observation.

According to plaintiff he used this ladder many times during the two cleaning seasons each year—in cleaning the several flats. At other times he used his own ladders. There was no evidence that this was a semi-annual cleaning season. The occasion of this work was the proposed coming of a new tenant. With two stepladders in perfect condition, plaintiff put this bad, weak, and wobbly ladder,—black and old, with rusty braces, and ropes, straps and slats,—at the west

end to support the structure he proposed to build. The use he was making of it appears most unusual. It was being used to support one end of a twelve foot board, and another stepladder was to be mounted on the board, and the plaintiff was to ascend to the top of the upper stepladder, which was to be leaned against the wall. There was no evidence that such a structure had ever been devised or used by anyone else, for supporting a third stepladder, or that appellants knew of the prior or proposed use of this stepladder by plaintiff for such purpose. It is apparent that the danger was increased and plaintiff's injuries resulted from the particular use which plaintiff made of the ladder in the said scaffold. He loaded this old stepladder with a part of his weight, and a part of the weight of the superstructure. The location of his stepladder and his weight on the twelve foot board extending between the two supporting stepladders, does not appear. By the arrangement plaintiff was able to ascend and did ascend, to a point almost double the height of the old ladder and fell from a high point.

■ A stepladder is an appliance in common use. The dangers attending its use are matters of common knowledge, and particulary within the knowledge of men engaged in their use in janitor work for more than twenty-five years. Plaintiff is chargeable with the knowledge of those facts he admitted to be within his knowledge, and of those facts obvious and open to the observation of ordinary men under like or similar circumstances.

The question presented is whether or not the danger in using said ladder and erecting such scaffold and going thereon was so obvious, immediate and glaring as to deter an ordinarily prudent man from using said ladder in the construction of such a scaffold and going thereon under the same or similar circumstances as those which surrounded the plaintiff. If it was not, plaintiff was not negligent as a matter of law. If, on the other hand, in view of plaintiff's testimony and the conceded facts in this case, plaintiff did not act as an ordinarily careful and prudent person would usually have acted, under the same or similar circumstances as those which surrounded plaintiff, then the plaintiff was negligent in using said ladder in constructing said scaffold, and in going thereon, and cannot recover in this case. "While it is true a servant is not chargeable with contributory negligence, as a matter of law, unless the danger he encounters is glaring and obvious, yet if it is so glaring and obvious that reasonable men could not differ in their characterization of his conduct as so negligent that a prudent servant would not have been guilty thereof it is the duty of the court to declare his conduct contributory negligence as a matter of law." [Van Bibber v. Swift & Company, 286 Mo. 317, 228 S. W. 69, 77.]

If from a consideration of all of the evidence in the case favorable to plaintiff, "it conclusively appears—that is, appears so convincingly that no reasonable and disinterested minds can rightfully disagree

thereover—that plaintiff did not exercise the reasonable and ordinary care which the law requires him to use for the preservation of his own safety," he is guilty of contributory negligence as a matter of law. [Ross v. Hoffman (Mo. App.), 269 S. W. 679, 680; Cech v. Chemical Company, 323 Mo. 601, 20 S. W. (2d) 509, 511.]

Further, "the cases hold that a servant cannot recover for injury sustained in the falling of a scaffold constructed by him for his own use when by the exercise of ordinary care, with the materials at hand the scaffold could have been made secure and safe and his injury was directly and proximately due to his own failure to exercise such care." [State ex rel. Horspool v. Haid, 334 Mo. 196, 65 S. W. (2d) 923, 926.] In said case the plaintiff, a carpenter, engaged in shingling a building failed to nail down scaffold platform boards in a scaffold prepared by him, and the boards, by reason thereof, tilted and collapsed where the boards met, and he fell and was injured. It was held that no case was made for the jury.

In the case at bar, if we assume that there was evidence that appellants furnished this ladder, then the plaintiff, with exactly the same material at hand, by merely using the two stepladders that he concedes were in perfect condition, as a base for his scaffold, could have used the old ladder, which he knew was bad, at the top of the scaffold where the hinges and supporing legs would not have been in use at all. Plaintiff with a full knowledge of the condition of this ladder used it as a support for the scaffold he proposed to build.

In the case of Williams v. Ransom, 234 Mo. 55, 71, 136 S. W. 349, the plaintiff, a carpenter, was erecting a two story building and was engaged in the construction of a scaffold when the ladder upon which plaintiff was working slid at the bottom causing plaintiff to fall. A verdict for defendant was affirmed and the court said: "This case is different from one where the principal has scaffolds erected, and then directs servants who have not participated in the erection thereof to go thereupon and work. Here there is evidence from which the jury could find that the plaintiff had a double duty to perform, i. e., (1) to construct a safe and suitable scaffold upon which to work, and (2) then to do the work required. With this dual duty imposed upon plaintiff, can it be said that he could be guilty of negligence in constructing the scaffold, and then hold his principal liable because he fell from a scaffold, which he himself helped to construct? We think not." In that case there was evidence that plaintiff was experienced and plaintiff and his helper received "no directions about how they should build ladder scaffolds;" as it was considered unnecessary since they were experienced carpenters.

Appellants cite the case of Blundell v. William A. Miller Elevator Mfg. Company, 189 Mo. 552, 88 S. W. 103, and the cases therein cited, and respondent concedes that, "said case announced certain

guiding principles, among others, applicable to the facts of the case at bar, and particularly to the simple tool.'' This case states one rule of law which respondent concedes is correct, as follows:

''If the master failed in his duty, and if the servant knows, or by the exercise of ordinary care could know, that the appliances furnished are not altogether or reasonably safe, the servant is not obliged to refuse to use the appliances, or quit the service, if he reasonably believes that by the exercise of proper care and caution he can safely use the appliances, notwithstanding they are not so reasonably safe; and if he does so, and exercises ordinary care and caution, and is injured, he does not waive his right to compensation for injuries received in consequence thereof, nor is he guilty of negligence. But if the appliance furnished is obviously so dangerous that a reasonably prudent man would not attempt to use it, or that it cannot be safely used even with care and caution, or, otherwise stated, if the danger of using the appliance is patent, or such as to threaten immediate injury, and the servant uses the same, he is thereby guilty of contributory negligence, and the master is not liable, notwithstanding his prior failure of duty.''

In the Blundell case plaintiff was an experienced mill-wright and was injured when a ladder he was working on slipped and plaintiff fell and was injured. In that case the court said: ''The manner of doing the work was left entirely to the plaintiff, who was an expert in that department of work. He was not required to do anything that would or could result in injury. He was left free to do the work in any manner he saw fit, with the instrumentality and appliances and assistance which were furnished him at the time he entered the employment. . . . There is no evidence in this case that the ladder was furnished by the defendant. The plaintiff says he found it in the building lying with or close to the materials which were to be used in the construction of the elevator, but that he did not know who put it there or to whom it belonged. The plaintiff, therefore, has failed, absolutely, to show that the ladder was one of the appliances which the defendant furnished.

''But assuming that the ladder was furnished by the defendant, the failure of the defendant to provide prongs or safety hooks to keep the ladder from slipping is not sufficient to make the defendant liable in this case. The ladder was a very simple appliance, one that is familiar to every grown man. Its liability to slip when not resting firmly or securely is a matter known to all men. Yet ladders are constantly used, and very few of them have prongs or safety hooks thereon.''

In the case of Forbes v. Dunnavant, 198 Mo. 193, 95 S. W. 934, Judge LAMM used the following language which we think applicable here, ''. . . A servant is presumed to possess not only common sense, but certain knowledge peculiar to his trade or art. The mas-

ter may be presumed to hire, not only the bodily services of the servant (his hands, eyes, ears, muscles and legs,) but the skill and knowledge pertaining to the servant's art or trade, and possessed by the latter. Hence it is steadily held as sound law that the master may trust the servant to perform the intermediate, ordinary and simple duties incident to the servant's employment and resting upon the servant's knowledge and skill. For instance, a carpenter knows a good board as well as his master, and in many cases, better.''

■ Where the circumstances are such that it is apparent from the servant's own evidence that the servant had very superior knowledge to the master and that the servant relied on his own knowledge and did the work his own way, he cannot be said to have relied on the master for assurances of safety. [Knorpp v. Wagner, 195 Mo. 637, 93 S. W. 961, 968.]

Respondent contends that each and every one of the foregoing cases relied on may be distinguished in their facts from the facts in the case at bar and that only the general rule heretofore quoted from the Blundell case is applicable to the facts in this case, and that said general principles supports respondents' judgment. The holdings in the foregoing cases are particularly applicable here, and rule the facts before us. In view of the conceded facts plaintiff was guilty of contributory negligence as a matter of law and cannot recover in this case. [See, also, Watson v. Carthage Marble & White Lime Company (Mo. App.), 290 S. W. 649, 651; Watkins v. Bird-Sykes-Bunker, 322 Mo. 830, 16 S. W. (2d) 38, 43.]

The judgment is reversed. *Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur, except *Hays, P. J.*, absent.