**A. A. MOORE, Appellant,**

v.

**Roy STOKES, Respondent.**

No. 7405.

Springfield Court of Appeals.

Missouri.

Jan. 31, 1956.

Riddle & Baker, Malden, for appellant.

Ford & Ford, Kennett, for respondent.

McDOWELL, Presiding Judge.

This appeal is from a judgment of the Circuit Court of Dunklin County, Missouri, sustaining defendant's after trial motion for judgment in accordance with his motion for directed verdict on the ground plaintiff was guilty of contributory negligence as a matter of law, and, in the alternative, awarding a new trial because the verdict was against the weight of the evidence.

The action was for damages sustained by plaintiff while dehorning cattle for defendant on November 10, 1952. The petition stated that defendant employed plaintiff on November 9, 1952, to go to defendant's farm and dehorn some yearling cattle; that when he attempted to dehorn one animal, it jerked its head and neck causing the dehorners to strike plaintiff in the abdomen, permanently injuring him; that the injuries were directly and proximately caused by the negligence of defendant in failing to have a sufficient number of workmen assigned to said dehorning to render the same safe.

The answer was a general denial; a denial that plaintiff was an employee of defendant; a plea that plaintiff had knowledge of the number of workmen provided prior to the time of the dehorning and by the use of ordinary care could have avoided the injury; a plea of contributory negligence and a plea of assumption of risk.

The reply was a general denial of new matter alleged.

The cause was tried by jury resulting in a verdict and judgment for plaintiff for $5,000. The trial court sustained defendant's after trial motion for judgment on the ground that defendant was guilty of contributory negligence as a matter of law; and, in the alternative, it sustained the motion for new trial because the verdict was against the weight of the evidence. Plaintiff appealed.

In our opinion we will refer to appellant as plaintiff and respondent as defendant, the position they occupied in the lower court.

Under point IV of defendant's brief it is urged that the judgment of the trial court should be affirmed for the reason that plaintiff failed to make a submissible case.

The record shows that at the close of all of the evidence defendant moved for directed verdict, assigning, as one of the reasons therefor, that plaintiff failed to make a submissible case.

In Winters v. Terminal R. Ass'n of St. Louis, 363 Mo. 606, 252 S.W.2d 380, 384, (6) the law is stated:

"The Supreme Court has not said that a case should be submitted and that a jury may return a verdict based upon and supported by mere speculation. The court has repeatedly said that 'the essential requirement is that mere speculation be not allowed to do duty for probative facts, *after making due allowance for all reasonably possible inferences favoring the party whose case is attacked.*' Galloway v. United States, 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458, 1473. The test

of the presence of reasonably possible inferences, of probative facts and ultimately of submissibility is that 'Whenever facts are in dispute or *the evidence is such that fair-minded men may draw different inferences,*' even though thereafter 'a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. *Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear.* But where * * * there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion.' "

This court in Palmer v. Lasswell, Mo. App., 267 S.W.2d 492, 495, stated the law:

"Of course, we must here consider the evidence in the light most favorable to the verdict below, must give plaintiff the benefit of every favorable inference which the evidence tends to support, and must disregard defendants' evidence unless it aids plaintiff's case." (See cases cited.)

Following the law, as above stated, we here state the record testimony necessary for a determination of the issue as to whether or not plaintiff made a submissible case. The evidence shows that plaintiff is a tenant farmer, farming some 400 acres of land in Dunklin County; that he is experienced in dehorning cattle. He testified that he had been dehorning cattle 10 or 12 years and that he had dehorned a large number, using the same type of dehorner as he used in the instant case; that on November 9, 1952, defendant employed him to dehorn a number of yearling cattle for a consideration of 50¢ per head; that defendant stated he would furnish sufficient help to do the work so that plaintiff would not get hurt. He stated that the number of helpers was never named.

Plaintiff testified that pursuant to this employment he went to defendant's farm November 10, 1952, about 8:00 o'clock A.M., to do the work; that when he arrived he found only three helpers present to do the work besides himself; that the chute, in which the cattle were placed for dehorning, was about 12 feet long and 4 feet wide. It was connected with the stock pen at one end by a gate through which the cattle were driven to be dehorned. At the other end of the chute was a large lever which fastened around the animal's neck and held it while being dehorned. Plaintiff admitted that the chute and dehorners were in good condition and the only complaint made was the lack of a man to catch the animal by the nose and hold its head to one side so that plaintiff, while dehorning it, could stand to one side instead of in front of the animal.

The testimony is that one man drove the cattle into the chute and fastened the gate, one man clamped the lever about its neck, and one man poured the tar on the horn after it was cut, while plaintiff did the dehorning. The dehorners used were straight steel dehorners which clipped the horns by placing them around the horn and closing the knives by closing the handles. Plaintiff testified that he had dehorned two or three smaller cattle on the morning he was injured when one weighing about 700 pounds was driven in the chute. He testified that because there was no one to hold the calf's head to one side he had to stand out in front of it in order to dehorn it; that when he started to cut the horn by bringing the handles together the animal jumped forward causing the handles of the dehorners to strike him in the abdomen at a place where he had been operated for appendicitis, knocking him down and rupturing him. Plaintiff gave this testimony:

"Q. On this occasion, November the 10th, 1952, where did you stand. A. I had to stand right in front of him.

"Q. Now then, on that occasion, November the 10th, 19 and 52, were you injured? A. Yes, sir.

"Q. And will you tell the Court and jury how you were injured? A. All I know, I come down with the de-

horners and he just come forward and knocked me down.

"Q. And what caused the injury: I mean by that what implement hit you. A. The handles of the dehorners."

The witness testified that he swapped work with defendant in the spring of 1952 and dehorned from 20 to 35 cattle for defendant at the same place as in the instant case, using the same chute and dehorner; that on that occasion there were six or seven helpers furnished; that two drove the cattle in the chute; one held the lever clamping its neck, one caught the animal by the nose and held its head to one side while he did the dehorning and another helper poured the tar on the cut horns; that when the calf's head was held to the side it could not move forward or backward and that he, when dehorning it, could stand to the side and out of danger. But he stated that in the instant case there was no one to hold the calf's head to the side and it could move its body a distance from its shoulders to its horns and because of such lack of help, plaintiff was forced to stand out in front of the calf and was injured by the calf lunging forward.

It is admitted that at the time of the dehorning, in this case, defendant was not present. There is no question that plaintiff knew of the danger of the calf moving its body back and forth. He admitted that the cutting of a horn was very painful and caused the animal being dehorned to struggle and move its body about. He admitted that the man who drove the calf into the chute was about 12 feet from him on the other side of the chute and he did not ask this man to hold the calf by the nose; that the man who poured the tar was standing close by his side and he made no request of him to perform this duty. There is no evidence that plaintiff ever requested anyone to do anything at this time or that he made any complaint before starting to work that the help was not sufficient.

He did not testify what the usual number of helpers were in doing this kind of work or that it was customary to have an extra man just for the purpose of holding the calf's head to one side. The only testimony as to what help was necessary was that on a former occasion there was furnished a man to hold the calf's head to one side.

The defendant placed on the stand a veterinarian who testified that the customary number used in dehorning cattle was three. The evidence shows that after plaintiff was injured the three workers remaining on the job finished the dehorning of 10 or 12 cattle.

We are of the opinion that this evidence did not make a submissible case for the jury showing defendant was negligent in failing to furnish a sufficient number of employees to do the dehorning. It is not sufficient to show that plaintiff stood in front of the animal to dehorn it and that the animal lunged forward causing the handles of the dehorners to strike plaintiff and injure him. Plaintiff was experienced in this work. He was in charge of the work. There is nothing to show that if he wanted the calf's head held to one side, while he was dehorning the same, he could not have requested one of the other men to do that work for him. The evidence fails to show that a failure to furnish four helpers instead of three would justify the jury in finding negligence on the part of defendant and, following the law as declared herein, the jury cannot return a verdict based upon and supported by mere speculation. We think there was a complete absence of probative facts to support the conclusion reached by the jury and that there is not evidentiary basis for the jury's verdict.

The trial court based its judgment upon the ground that defendant was guilty of contributory negligence as a matter of law, and it is the contention of plaintiff that this was error.

56 C.J.S., Master and Servant, § 421, p. 1242, stated the law thus:

"Contributory negligence of an employee is the omission on his part to

use such precautions for his own safety as ordinary prudence requires. * * * that contributory negligence on the part of an employee must involve some danger that is so glaring as to threaten immediate injury, and that contributory negligence exists only where an employee with full knowledge of an existing danger and with a free choice of avoiding or exposing himself to it deliberately or carelessly exposes himself." Jenkins v. Wabash Ry. Co., 335 Mo. 748, 73 S.W.2d 1002; Davis v. City of Independence, 330 Mo. 201, 49 S.W.2d 95; Bell v. Terminal Railroad Ass'n of St. Louis, 322 Mo. 886, 18 S.W.2d 40.

In Mosely v. Sum, 344 Mo. 969, 130 S.W. 2d 465, 469(5), the Supreme Court stated the law:

"The question presented is whether or not the danger in using said ladder and erecting such scaffold and going thereon was so obvious, immediate and glaring as to deter an ordinarily prudent man from using said ladder in the construction of such a scaffold and going thereon under the same or similar circumstances as those which surrounded the plaintiff. If it was not, plaintiff was not negligent as a matter of law. If, on the other hand, in view of plaintiff's testimony and the conceded facts in this case, plaintiff did not act as an ordinarily careful and prudent person would usually have acted, under the same or similar circumstances as those which surrounded plaintiff, then the plaintiff was negligent in using said ladder in constructing said scaffold, and in going thereon, and cannot recover in this case. 'While it is true a servant is not chargeable with contributory negligence, as a matter of law, unless the danger he encounters is glaring and obvious, yet if it is so glaring and obvious that reasonable men could not differ in their characterization of his conduct as so negligent that a prudent servant would not have been guilty

thereof it is the duty of the court to declare his conduct contributory negligence as a matter of law.' Van Bibber v. Swift & Co., 286 Mo. 317, 228 S.W. 69, 77.

"If from a consideration of all the evidence in the case favorable to plaintiff, 'it conclusively appears—that is, appears so convincingly that no reasonable and disinterested minds can rightfully disagree thereover—that plaintiff did not exercise the reasonable and ordinary care which the law requires him to use for the preservation of his own safety,' he is guilty of contributory negligence as a matter of law. Ross v. Hoffman, Mo.App., 269 S.W. 679, 680; Cech v. [Mallinckrodt] Chemical Co., 323 Mo. 601, 20 S.W.2d 509, 511."

In Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242, 245, decided in 1948, the Supreme Court made this statement of law:

" * * * If from the consideration of all the evidence favorable to plaintiff it appears so convincingly that reasonable minds could come to only one conclusion, that is, that plaintiff did not exercise the highest degree of care for his own safety, then he was guilty of contributory negligence as a matter of law. Russell v. Johnson, 349 Mo. 267, 160 S.W.2d 701; Mosely v. Sum, 344 Mo. 969, 130 S.W.2d 465, loc. cit. 469, and cases there cited. * * *"

The latter case was one involving automobile damages which required the highest degree of care. In the instant case only reasonable and ordinary care is required of the employee for his own safety.

There can be no question under the evidence that plaintiff, an experienced man in dehorning cattle, was aware of the danger involved in such work. He knew that when he clipped the horns with the dehorners it was very painful and the animal would do everything in its power to escape. He testified that he knew the animal could move forward from its shoulders to its horns while held by the lever in the chute.

Likewise, he knew the danger of standing out in front of the animal when he assumed the position he did. There was no one who directed him to perform the work in this manner. He was in charge of the work. He was acquainted with this very chute and with the dehorners he was using. We think the want of care on the part of plaintiff arising from standing in front of the animal under the circumstances in the case, was so obvious that an ordinary careful person would observe and appreciate. Considering all of the evidence in the case most favorable to plaintiff it conclusively appears that no reasonable disinterested mind could disagree that plaintiff did not exercise the reasonable and ordinary care which the law requires him to use for the preservation of his own safety. The trial court was justified in finding plaintiff guilty of contributory negligence as a matter of law.

Judgment affirmed.

STONE and RUARK, JJ., concur.